**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| H-1 AUTO CARE, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>BALHAR LASHER, EKTA LASHER, SQUARE-1 AUTO CARE, INC., AAA AUTO CARE, INC., FLEMINGTON AUTO CARE INC, HAMILTON AUTO CARE INC, JOSE BRAVO, and SCOTT JAEGER,<br><br>               Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT** |

Plaintiff H-1 AUTO CARE, LLC ("H1" or "Plaintiff"), by and through undersigned counsel, alleges for its Verified Complaint against Defendants BALHAR LASHER, EKTA LASHER, SQUARE-1 AUTO CARE, INC. ("Square-1"), AAA AUTO CARE, INC. ("AAA"), FLEMINGTON AUTO CARE INC ("Flemington Auto"), HAMILTON AUTO CARE INC ("Hamilton Auto"), JOSE BRAVO ("Bravo"), and SCOTT JAEGER ("Jaeger") (collectively "Defendants"), as follows:

**PARTIES**

1.      H1 is a Nevada limited liability company with its principal place of business at 100 2nd Avenue S., Suite #1203, St. Petersburg, Florida, 33701.

2.      Balhar Lasher is a citizen of the State of New Jersey, with a last known address of 9 Alta Court, Princeton Junction, New Jersey 08550.  Balhar Lasher is also known as "Barry" Lasher.

3.      Ekta Lasher is a citizen of the State of New Jersey, with a last known address of 9 Alta Court, Princeton Junction, New Jersey 08550.

4.     AAA is a New Jersey corporation with its principal place of business at 464 Route 202 North, Flemington, New Jersey 08822.

5.     Flemington Auto is a New Jersey corporation with its principal place of business at 9 Alta Court, Princeton Junction, New Jersey 08550.

6.     Square-1 is a New Jersey corporation with its principal place of business at 3145 Quakerbridge Road, Hamilton, New Jersey 08619.

7.     Hamilton Auto is a New Jersey corporation with its principal place of business at 9 Alta Court, Princeton Junction, New Jersey 08550.

8.     Upon information and belief, Bravo is a citizen of the State of New Jersey.

9.     Upon information and belief, Jaeger is a citizen of the State of New Jersey, with a last known address of 45 Rosemont-Ringoes Road, Ringoes, New Jersey 08551.

## PRELIMINARY STATEMENT

10.     H1 sells franchises for retail automotive products and services.

11.     Balhar Lasher is a former H1 franchisee.

12.     AAA is a corporation owned and controlled by Balhar Lasher which, until late 2020, operated a H1 franchise in Flemington, New Jersey.

13.     Square-1 is a corporation owned and controlled by Balhar Lasher which, until late 2020, operated a H1 franchise in Hamilton, New Jersey.

14.     Ekta Lasher, Balhar Lasher's wife, incorporated Hamilton Auto and Flemington Auto in late 2020, which businesses are direct competitors of H1.

15.     Bravo is a former employee of Square-1 who serves as an employee of one of H1's competitors, Hamilton Auto, beginning in late 2020, which employment has continued, upon information and belief, through the present.

16.     Jaeger is a former employee of AAA who serves as an employee of one of H1's competitors, Flemington Auto, beginning in late 2020, which employment has continued, upon information and belief, through the present.

17.     Balhar Lasher engaged in an unlawful scheme to convert his H1 franchise locations into competing locations and reap the benefit of H1's hard-won goodwill and reputation in those locations.

18.     Upon information and belief, former Square-1 employee Bravo participated in a parallel scheme—with the help of Balhar Lasher, Ekta Lasher, and Square-1—at the behest of his new employer, Hamilton Auto, to surreptitiously gain unauthorized access to H1's confidential information and trade secrets, including, but not limited to customer information, in order to benefit Hamilton Auto.

19.     Upon information and belief, former AAA employee Bravo participated in a parallel scheme—with the help of Balhar Lasher, Ekta Lasher, and AAA—at the behest of his new employer, Flemington Auto, to surreptitiously gain unauthorized access to H1's confidential information and trade secrets, including, but not limited to customer information, in order to benefit Flemington Auto.

20.     H1 brings these claims to put an end to Defendants' roles in the foregoing unlawful schemes, in response to Balhar Lasher's, Ekta Lasher's, AAA's, and Square-1's breaches of agreements with Plaintiff, as well as Hamilton Auto's, Flemington Auto's, Ekta Lasher's, Bravo's, and Jaeger's tortious interference with those agreements; and to recover the extensive damages due and owing to H1.

## JURISDICTION AND VENUE

21.     This Court has personal jurisdiction over each of the Defendants because Balhar

Lasher, Ekta Lasher, Bravo, and Jaeger are natural persons and citizens of the State of New Jersey, and AAA, Square-1, Flemington Auto, and Hamilton Auto are domestic corporations each with a principal place of business in the State of New Jersey.

22.     This Court has original (federal question) subject matter jurisdiction over this claim pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims brought under the DTSA.

23.     This Court has original subject matter jurisdiction over this claim pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to H1's claims occurred here and because all Defendants reside in this judicial district.

### **FACTUAL BACKGROUND**

A.     **H1's Franchise System**

25.     Plaintiff is the franchisor of Honest-1 Auto Care auto service centers located throughout the United States.

26.     H1 has expended considerable time, effort and expense to create and develop a system for the implementation and operation of a distinctive type of automotive products and services business. This system is operated according to certain confidential and proprietary procedures which include distinctive interior designs, equipment layout plans, advertising signs, uniforms and other items used in operating procedures and business techniques, including

procedures and instructions set forth in H1's operations and procedures manual ("Manual"), proprietary software, financial data, instructional materials and training programs, research and development, product development plans and trade secrets (collectively, the "Confidential Information"). It would be extremely difficult, if not impossible, to reverse engineer H1's particular methods of operation.

27.     H1 owns the federally-registered H1 trade name, trademarks, service marks, logos and derivations thereof (the "Marks").

28.     Plaintiff's franchisees operate pursuant to franchise agreements that grant franchisees a limited license to use Plaintiff's Marks and Confidential Information, and to identify as H1 franchisees using Plaintiff's registered trademarks and trade dress, during the term of the franchise agreements.

29.     In return, among other things, Plaintiff's franchisees pay royalty and other fees to Plaintiff.

30.     During the term of the franchise agreements and following their terminations, Plaintiff's franchisees must abide by in-term and post-termination obligations, including, *inter alia,* confidentiality agreements and covenants not to compete.

**B.     The Franchise Agreements at Issue**

31.     On or about June 17, 2011, Balhar Lasher entered into a valid and enforceable franchise agreement with H1 ("190 Franchise Agreement"). *See* **Exhibit A**.

32.     On August 7, 2012, Balhar Lasher assigned the 190 Franchise Agreement to AAA. *See* **Exhibit B**.

33.     Through AAA, Balhar Lasher operated a H1 location under the 190 Franchise Agreement at 464 Route 202 North, Flemington, New Jersey 08822 ("190 Location").

34.     Balhar Lasher personally guaranteed the obligations arising under the 190 Franchise Agreement ("190 Guaranty").  Ex. A, Exhibit E thereto.

35.     On or about March 15, 2019, Square-1 entered into a valid and enforceable franchise agreement with H1 for the territory in Hamilton, New Jersey known as 277 ("277 Franchise Agreement") (the 190 Franchise Agreement and the 277 Franchise Agreement are together referred to as the "Franchise Agreements"). *See* **Exhibit C**. Through Square-1, Balhar Lasher operated a H1 location pursuant to the 277 Franchise Agreement at 3145 Quakerbridge Road, Mercerville, New Jersey 08619 ("277 Location") (the 190 Location and 277 Location are together referred to as the "Franchise Locations").

36.     Balhar Lasher executed the 277 Franchise Agreement on behalf of Square-1 in his capacity as its President.

37.     Balhar Lasher and Ekta Lasher personally guaranteed Square-1's obligations arising under the 277 Franchise Agreement ("277 Guaranty").  Ex. C, Attachment E.

38.     Pursuant to the Franchise Agreements, AAA and Square-1 were obligated to pay monthly royalties in the amount of 6% of gross sales.  Ex. A at § 4.2, Ex. C at § 4.3.

39.     Pursuant to the Franchise Agreements, AAA and Square-1 were obligated to pay monthly advertising fees in the amount of 1% of gross sales.  Ex. A at § 4.3, Ex. C at § 4.4.

40.     Pursuant to the Franchise Agreements, ten dollars is due each day that royalty fees remain unpaid to H1.  Ex. A at § 4.4, Ex. C at § 4.6.

41.     Pursuant to the Franchise Agreements, interest on amounts due and owing to Plaintiff for advertising fees are compounded at a rate of 18% per annum.  Ex. A at § 4.4, Ex. C at § 4.6.

42.     Pursuant to the Franchise Agreements, Plaintiff had the right to terminate the

Franchise Agreements without notice or opportunity to cure in the event of, *inter alia*, any sale, assignment or transfer without H1's written consent.  Ex. A at § 12.2.1, Ex. C at § 12.2.1.

43.     In Section 14.7 of the Franchise Agreements, AAA and Square-1 agreed to immediately pay all amounts due and owing to H1 upon the termination of any Franchise Agreement.  Ex. A at § 14.7, Ex. C at § 14.7.

44.     Pursuant to the terms of the Franchise Agreements, AAA and Square-1 agreed to not directly or indirectly "[d]ivert or attempt to divert any business or customer . . . to any competitor" during the term of and subject to the post-termination provisions in the Franchise Agreements.  Ex. A at § 15.2.1, Ex. C at § 15.2.1.

45.     Pursuant to the terms of the Franchise Agreements, AAA and Square-1 agreed to not directly or indirectly "[s]ell or offer for sale automotive repair and maintenance services in any venue other than through and on the premises of the Franchised Business" during the term of and subject to the post-termination provisions in the Franchise Agreements.  Ex. A at § 15.2.4, Ex. C at § 15.2.4.

46.     Pursuant to the terms of the Franchise Agreements, AAA and Square-1 agreed to cease use of all equipment, format, confidential methods, customer database, programs, literature, procedures, Marks and distinctive trade dress, forms, slogans, uniforms, signs, symbols or devices.  Ex. A at § 14.2, Ex. C at § 14.2

47.     Pursuant to the terms of the Franchise Agreements, AAA and Square-1 agreed to a liquidated damages clause, whereby AAA and Square-1 agreed to pay to H1, *inter alia*, "liquidated damages equal to the average monthly value of the Royalty Fees Franchise Owner paid or owed to Franchisor during the twelve (12) months of operation preceding the effective date of termination multiplied by (a) twenty-four (24), being the number of months in two (2) full years,

or (b) the number of months remaining in the Agreement had it not been terminated, whichever is less." Ex. A at § 14.14, Ex. C at § 14.14

48.     In Section 15.3 of the Franchise Agreements, AAA and Square-1 agreed to a non-solicit covenant, agreeing that for a period of two years following termination to not own, maintain, engage in, be employed by, advise, assist, invest in, franchise, make loans to or have any interest in any business which is the same as or substantially similar to the Franchised Business and which is located "within a radius of twenty-five (25) miles of the approved site or the location of any Franchisor-owned or operated or Franchise Owner-operated Franchised Business which is in existence on the date of expiration or termination" of each of the Franchise Agreements.  Ex. A at § 15.3, Ex. C at § 15.3.

49.     Pursuant to the Franchise Agreements, AAA and Square-1 agreed to maintain absolute confidentiality of H1's Confidential Information, and to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.  Ex. A at Article VII, VIII, Ex. C at Article VII, VIII.

50.     With respect to the 277 Location, Balhar Lasher executed a Confidentiality and Non-Competition Agreement, whereby he agreed that for a period of six months following termination to "not employ or solicit for employment any person who is at the time employed by Franchisor, Franchise Owner, or by any other franchisee in the System, and Key Individual shall not directly or indirectly induce this person to leave their employment."  Exhibit C, Attachment G, § I.

51.     Amongst other things, the Confidentiality and Non-Competition Agreement further requires that, for a period of two years after the termination of the 277 Franchise Agreement,

Balhar Lasher "will not, directly or indirectly, for itself or through, on behalf of or in conjunction with any person, persons, spouse, partnership or corporation"

    a.   become an officer, director, partner, trustee or shareholder or other type of owner, nor own, maintain, engage in, be employed by, advise, assist, invest in, franchise, make loans to or have any interest in any competing business;

    b.   sell or market products that compete or will compete with H1;

    c.   design or develop competing products, or

    d.   become a franchisee, consultant, officer, director, partner, trustee or shareholder or other type of owner of more than five percent (5%) of the outstanding common stock of, or provide services or information to any person or entity that is designing or developing competing products.

Exhibit C, Attachment G, § F.

52.    The foregoing obligations are necessary to protect Plaintiff's protectable interest in their franchise business, including, *inter alia*: (a) protecting their goodwill and reputation; (b) retaining customer relationships; (c) maintaining the confidentiality of their Confidential Information, including but not limited to customer lists and trade secrets; and (d) preserving Plaintiff's ability to facilitate the operation of successor H1 franchises at franchise locations that have become associated in the minds of consumers with Plaintiff.

53.    Plaintiff provided its Confidential Information to Balhar Lasher, AAA and Square-1 pursuant to the terms of the Franchise Agreements.

54.    This Confidential Information provides Plaintiff with a competitive advantage in its industry, and royalties and fees paid by franchisees to operate H1 franchises constitute the majority of Plaintiff's revenues.  Plaintiff has developed its Confidential Information through

considerable investment in the expansion of its franchise system over almost two decades, and does not disclose such information except to parties bound by confidentiality obligations.

## C.    Purported Issues at the Franchise Locations, and the Termination of the 277 Franchise Agreement

55.    On October 20, 2020, Balhar Lasher contacted H1 stating his intention, on behalf of AAA and Square-1, to close the Franchise Locations and file for bankruptcy, asserting that his businesses were suffering due to the impact of the COVID-19 pandemic and he could no longer financially sustain operations. He stated that he had not paid his landlords for several months therefore might be imminently evicted, and that he would be defaulting on his outstanding business loan.

56.    After email and telephone discussions with H1, taking place from November 10 to November 17, 2020, Balhar Lasher stated, on behalf of AAA and Square-1, that he planned to shut down the 277 Location and focus on the 190 Location with financial and other support from H1.

57.    Based on Balhar Lasher's representations, on or about November 9, 2020, H1 offered to defer royalty fees and advertising contributions to help the 190 Location maintain operations until market conditions improved. In accordance with that offer, AAA and H1 entered into a Royalty Fee and Advertising Contribution Agreement on November 15, 2020 ("Deferment Agreement"), whereby royalty fees and advertising contributions owed by AAA to H1 were deferred for a two-month period to assist AAA with improving its cash flow for the 190 Location.

58.    Based on Balhar Lasher's representations regarding the shutdown of the 277 Location, H1, Square-1, Balhar Lasher, and Ekta Lasher entered into an agreement dated November 17, 2020 ("Mutual Termination Agreement") to terminate the 277 Franchise Agreement. A copy of the Mutual Termination Agreement is attached hereto as **Exhibit D**.

59.     H1 entered into the Mutual Termination Agreement on November 17, 2020, only after Square-1, Balhar Lasher, and Ekta Lasher informed H1 that the 277 Location would be "permanently closing November 30, 2020 or earlier."  *See* Exhibit D.

60.     As a result of Balhar Lasher's representation that he was closing the 277 Location and focusing on the 190 Location, H1 did not enforce any financial or other penalties with respect to the early termination of the 277 Franchise Agreement.

61.     Square-1, Balhar Lasher, and Ekta Lasher agreed under the Mutual Termination Agreement that the non-compete and non-solicitation covenants in the 277 Franchise Agreement would remain effective.  *Id*. at ¶ 1.

62.     Square-1, Balhar Lasher, and Ekta Lasher agreed under the Mutual Termination Agreement that the 277 Guaranty dated March 15, 2019 would remain effective.  *Id*. at ¶ 1.

**D.     Violations of the 190 Franchise Agreement and the Termination Thereof**

63.     Balhar Lasher represented on December 21, 2020 that the 190 Location would close on or before December 31, 2020.

64.     The system used by AAA for generating client invoices and recording sales did not show any sales after December 22, 2020 at the 190 Location.

65.     Despite the lack of recorded sales, the location continued to operate and use the H1 name and Marks in violation of the 190 Franchise Agreement.  Further, and under the control and direction of Balhar Lasher and Jaeger, the location maintained the same telephone number and employees at the store continued to answer the telephone as if the location was still an H1 franchise, and directed customers to the new store.

11

66. Some customers calling the telephone number previously maintained by the 190 Location were confused as to whether the store was closing and re-opening elsewhere as a H1 franchise, or whether the store had closed and a completely different repair shop was opening.

67. Upon information and belief, Balhar Lasher, Jaeger, and Flemington Auto engaged in the foregoing acts so that Defendants could convert H1's goodwill by misrepresenting to customers that Flemington Auto's services were simply an extension of the H1 services available at the 190 Franchise Location.

68. The closure or transfer of the 190 Location without approval is an event of default under the 190 Franchise Agreement

69. Given the foregoing violations, H1 terminated the 190 Franchise Agreement on December 29, 2020. *See* **Exhibit E**.

70. The termination letter reminded AAA and Balhar Lasher of their ongoing post-termination duties, including but not limited to paying all monies due and owing to Plaintiff, and refraining from competing with H1 for two years within 25 miles of any of its former franchise locations, or any existing franchisor-owned or operated or franchise owner-operated franchise H1 locations. *Id*. at 3.

**E.      The Incorporation of Hamilton Auto and Flemington Auto to Unlawfully Compete with H1**

71. In or around January 2021, H1 learned that, on November 5, 2020 (twelve (12) days before the 277 Location Mutual Termination Agreement was executed), a Certificate of Incorporation was filed with the State of New Jersey forming "Hamilton Auto Care Inc" with Ekta Lasher as incorporator and director.

72.     In or around January 2021, H1 learned that, on November 17, 2020—the same date that the Mutual Termination Agreement related to the 277 Location and two (2) days after the Deferment Agreement related to the 190 Location was executed—a Certificate of Incorporation was filed with the State of New Jersey forming "Flemington Auto Care Inc" with Ekta Lasher as incorporator and director.

73.     Upon information and belief, Flemington Auto and Hamilton Auto were formed at the behest of Balhar Lasher to operate competing auto care facilities at the former Franchise Locations in competition with H1 and in direct violation of the Franchise Agreements.

74.     In or around January 2021, H1 learned that, instead of closing the 277 Location, Square-1 was continuing to operate the 277 Location as an H1 facility and continuing to use H1's Confidential Information and Marks.  Further, and under the control and direction of Balhar Lasher and Bravo, the location maintained the same telephone number, and employees at the store continued to answer the telephone as if the location was still an H1 franchise, and directed customers to the new store.

75.     Some customers calling the telephone number previously maintained by the 277 Location were confused as to whether the store was closing and re-opening elsewhere as a H1 franchise, or whether the store had closed and a completely different repair shop was opening.

76.     Upon information and belief, Balhar Lasher, Ekta Lasher, Bravo, and Hamilton Auto engaged in the foregoing acts so that Defendants could convert H1's goodwill by misrepresenting to customers that Hamilton Auto's services were simply an extension of the H1 services available at the 277 Franchise Location.

**F.      Balhar Lasher's Unlawful Copying of Customer Information**

77.     During the term of the Franchise Agreements, Balhar Lasher, AAA, and Square-1 used the "Protractor" point-of-sale software at the Franchise Locations.  The Protractor software and database is H1's core business system used by franchisees to operate their H1 franchise locations, and H1 provides confidential and proprietary configuration and implementation guidance developed to enable franchisees to operate their H1 franchise locations with the Protractor software.

78.     Less than one week after Mutual Termination Agreement was executed, Balhar Lasher requested copies of the 277 Location's Protractor database be generated without H1's knowledge or permission for the purpose of accessing and taking H1's confidential and proprietary information, including customer contract information and records.  The foregoing was performed with the participation of Bravo, who signed the new Protractor agreement for Hamilton Auto as the purported new owner of the 277 Location.   While Bravo executed this new Protractor agreement on behalf of Hamilton Auto, Balhar Lasher was assigned as the key contact for all communications for Hamilton Auto's new Protractor agreement.

79.     Balhar Lasher, on behalf of Square-1, instituted the copy request under the guise of transferring the information to Bravo, the purported new owner of the 277 Location.

80.     In November 2020, during the term of the 190 Franchise Agreement, Balhar Lasher requested copies of the 190 Location's Protractor database be generated without H1's knowledge or permission for the purpose of accessing and taking H1's confidential and proprietary information, including customer contact information and records.  The foregoing was performed with the participation of Bravo, who signed the new Protractor agreement for Flemington Auto as the purported new owner of the 190 Location.   While Bravo executed this new Protractor

agreement on behalf of Flemington Auto, Balhar Lasher was assigned as the key contact for all communications for Flemington Auto's new Protractor agreement.

81.     Balhar Lasher, on behalf of AAA, instituted the copy request under the guise of transferring the information to Bravo, the purported new owner of the 190 Location.

82.     Bravo was not approved as a new owner for either of the Franchise Locations by H-1, and was not assigned either of the Franchise Agreements.

83.     In November and/or December 2020, Balhar Lasher, Bravo, Jaeger, AAA, and/or Square-1 provided the Protractor database and Confidential Information to Hamilton Auto and Flemington Auto.

84.     Upon information and belief, the Defendants used the database and Confidential Information unlawfully procured to unlawfully compete with H1 and to confuse H1 customers.

85.     Upon information and belief, Defendants knew that the copying of the Confidential Information was unlawful at the time, and that Defendants intended to share H1's Confidential Information so that Defendants could convert H1's goodwill by misrepresenting to customers that Hamilton Auto and Flemington Auto's services were simply an extension of the H1 services available at the Franchise Locations for many years.

G.      **Post-Termination Violations of the Franchise Agreements**

86.     Upon information and belief, Defendants colluded to ensure that Hamilton Auto and Flemington Auto obtained possession and control over the leases for the Franchise Locations so that those locations could be converted to Hamilton Auto and Flemington Auto facilities following the termination of Franchise Agreements.

87.     Balhar Lasher's operation of Hamilton Auto and Flemington Auto is in direct violation of the non-competition provisions of the Franchise Agreements.  Specifically:

    a.  Flemington Auto is within 25 miles of the H1 store located at 683 Bound Brook Road, Middlesex, NJ 08846, and the H1 store located at 352 Riders Lane, Milltown, NJ, 08850.

    b.  Flemington Auto is located at the former 190 Location.

    c.  Flemington Auto is within 25 miles of the former 277 Location.

    d.  Hamilton Auto is within 25 miles of the H1 store located at 352 Riders Lane, Milltown, NJ, 08850.

    e.  Hamilton Auto is located at the former 277 Location.

    f.  Hamilton Auto is within 25 miles of the former 190 Location.

88.    By providing competing services through Hamilton Auto and Flemington Auto, soliciting H1's customers, using H1's Confidential Information, and using the Marks for the benefit of Hamilton Auto and Flemington Auto, Balhar Lasher, Ekta Lasher, AAA, and Square-1—directly and indirectly—violated the covenants in the Franchise Agreements.

89.    Square-1, Balhar Lasher, and Ekta Lasher breached the Mutual Termination Agreement by, *inter alia*, failing to comply with the post-termination obligations in the 277 Franchise Agreement and colluding with Bravo, Jaeger and others to hinder or compromise H1's success.

90.    Neither the 190 Location nor the 277 Location closed and stopped operating as an auto care facility.  Instead, Defendants engaged in a scheme to intentionally use the H1 name and Marks to divert customers from H1.  Further, after the termination, employees answered the phone as "Honest-1 Auto Care."

91.    Subsequently, in December 2020 and January 2021, Flemington Auto and Hamilton Auto, at the direction of Balhar Lasher, Ekta Lasher, Bravo, and Jaeger, implemented

branding which directly infringed H1's Marks.  A side by side comparison shows the direct similarity of the two designs:



92.     In addition, Jaeger made statements and posted videos on social media, indicating that "Honest-1" was now "Square-1", in violation of federal trademark law and with the intent of confusing H1's former customers, including, but not limited to a video containing these images:



93.     In December 2020 and January 2021, H1 sent letters to Balhar Lasher, Ekta Lasher, AAA, and Square-1 concerning the ongoing breaches of the Franchise Agreements and the Mutual Termination Agreement.

94.     Thereafter, Flemington Auto and Hamilton Auto ceased using the Square-1 name and began using the names "Flemington Auto Care" and "Hamilton Auto Care," respectively.

95.     During the time that the 190 Location and 277 Location were active H1 franchises, hundreds of customers wrote reviews referencing H1's service.  The websites for Flemington Auto and Hamilton Auto continue to maintain those customer reviews which reference H1.  *See* https://www.Flemington Autoautocare.com/reviews;  https://www.Hamilton Autoautocare.com/reviews.

96.     Google My Business is an internet tool used by businesses to manage their online presence on Google.  A business can create a Google My Business profile to provide detail on their services, assist their customers, and maintain customer reviews.  During the time that the 190 Location and 277 Location were active H1 franchises, hundreds of customers wrote reviews referencing H1's service.  The Google My Business profile and reviews for the 190 Location and 277 Location were transferred by Balhar Lasher to Flemington Auto and Hamilton Auto, respectively.  The Google My Business profiles and reviews for Flemington Auto and Hamilton Auto continue to maintain customer reviews referencing H1.  *See* https://g.co/kgs/QQng7W; https://g.co/kgs/F59WyV.

97.     Yelp is an internet website used to rate businesses.  A business can claim a Yelp profile to provide detail on their services and respond to customer reviews.  During the time that the 277 Location was an active H1 franchise, customers wrote reviews referencing H1's service. The Yelp profile and reviews for the 277 Location were transferred at the request of Balhar Lasher to Hamilton Auto.  The Yelp profile and reviews for Hamilton Auto continue to maintain customer reviews referencing H1.  *See* https://www.yelp.com/biz/hamilton-auto-care-hamilton-township.

98.     Because the customer reviews identify and reference H1, Balhar Lasher continues

to hold not only himself, but his competing auto care businesses, out as a former H1 franchisee.

99.    Despite notice by H1 of the ongoing violations of the non-competition covenants of the Franchise Agreements, Balhar Lasher continues to violate those agreements.

100.    Following the termination of the Franchise Agreements, Balhar Lasher, AAA and Square-1 were required to pay to H1 all amounts due and owing to H1, including (but not limited to) any outstanding advertising fees, and royalties.  The damages owed under the 277 Franchise Agreement is $24,027.28.  The damages owed under the 190 Franchise Agreement is $68,320.87. As of the date of this Complaint, these amounts remain unpaid.

101.    As a result of the foregoing breaches, H1 has suffered and will continue to suffer loss of revenue, permanent loss of customers, damage to its goodwill and reputation, disruption to its franchise system, and market confusion.

**H.    PPP and EIDL Loans to Square-1 and AAA**

102.    In April 2020, the United States federal government launched the Paycheck Protection Program ("PPP"), a U.S. Small Business Administration ("SBA") administered forgivable business loan program established as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to help businesses continue paying their workers during the Coronavirus pandemic.

103.    Square-1, through Balhar Lasher, applied for and received $36,925 in First Draw PPP funds from Valley Bank, which forgivable loan was approved April 27, 2020.

104.    AAA, through Balhar Lasher, applied for and received $101,580 in First Draw PPP funds from Unity Bank, which forgivable loan was approved April 27, 2020.

105.    The COVID-19 Economic Injury Disaster Loan program ("COVID EIDL") is a SBA loan program with a purpose of supporting small businesses' recovery from the Coronavirus pandemic's economic impacts.

106.    AAA and Square-1, through Balhar Lasher, applied for and received a total of $272,400 in COVID EIDL loans, which loans were approved on May 18, 2020.  In addition, AAA and Square-1 received a minimum of $9,000 in COVID EIDL advances, which operate as grants.

107.    Despite the foregoing funds received totaling over $419,000 to support AAA's and Square-1's continuing operations as H1 businesses, Balhar Lasher represented to H1, months later, that his businesses were suffering due to the impact of the COVID-19 pandemic and at risk of imminent closure due to lack of available capital.  H1 was not made aware of the substantial funds provided by PPP or COVID EIDL loans or grants, and agreed to enter into the Mutual Termination Agreement and Deferral Agreement based on Balhar Lasher's representations that his businesses were suffering due to insufficient liquidity and that he planned to close both Franchise Locations.

108.    In December 2020, the United States federal government expanded the PPP to include the availability of Second Draw PPP forgivable loans for certain eligible businesses, with Second Draw PPP loan applications to begin in January 2021.

109.    During the second round of PPP financing, Square-1, through Balhar Lasher, applied for and received $36,972.75 in Second Draw PPP funds from Unity Bank, which forgivable loan was approved January 30, 2021.

110.    During the second round of PPP financing, AAA, through Balhar Lasher, applied for and received $101,580 in Second Draw PPP funds from Unity Bank, which forgivable loan was approved January 28, 2021.

111.    The application portal for Second Draw PPP loans was not operational until January 15, 2021.  Thus, at the time when Balhar Lasher sought funds under the second round of the PPP, he had already ceased operating the Franchise Locations under the AAA and Square-1 entities, and the Franchise Agreements had already been terminated.

112.    In total, AAA and Square-1 received over $560,000 in federal government loans or grants between April 2020 and January 2021, even though Balhar Lasher did not intend to continue operating a business through those entities, or had already ceased operating those entities.

113.    The foregoing loan amounts, in combination with the Deferral Agreement, should have enabled Balhar Lasher to continue operating the 190 Location and 277 Location.

114.    Although AAA and Square-1 were no longer H1 franchises during the second round of PPP funding and had ceased operations, Balhar Lasher represented that AAA and Square-1 were H1 franchises, not permanently closed, and that Second Draw PPP funds received would only be used to support the ongoing operations of AAA and Square-1.  Hamilton Auto and Flemington Auto were not eligible to receive PPP funds because neither entity was in operation as of February 15, 2020 as required for PPP application.

115.    The foregoing actions have caused and will cause damage to H1's goodwill and reputation.

## COUNT ONE
### Breach of the 190 Franchise Agreement by Balhar Lasher and AAA
### (Monetary and Equitable Claim)

116.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

117.    The 190 Franchise Agreement is a valid and enforceable contract.

118.    Plaintiff has performed every obligation and condition required under the 190 Franchise Agreement.

119.    Under the 190 Franchise Agreement, AAA and Balhar Lasher were obligated to, *inter alia*:

    a.    immediately pay all amounts due and owing to H1 upon termination of the 190 Franchise Agreement;

    b.    refrain from directly or indirectly competing with Plaintiff within 25 miles of the former 190 Location;

    c.    maintain absolute confidentiality of H1's Confidential Information, and to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

120.    AAA and Balhar Lasher breached the Franchise Agreements by, *inter alia*:

    a.    failing to pay amounts due and owing to H1;

    b.    conspiring with Ekta Lasher, Bravo, Jaeger, and Flemington Auto to convert the 190 Location to a Flemington Auto location;

    c.    indirectly competing with H1 following the termination of the 190 Franchise Agreement in concert with Ekta Lasher, Bravo, Jaeger, and/or Flemington Auto;

    d.    directly competing with H1 by operating an auto care business operated at the 190 Location following the termination of the 190 Franchise Agreement;

    e.    using the Marks and holding out the Flemington Auto location as if it were a H1 franchise after the termination of the 190 Franchise Agreement;

f.   failing to maintain the absolute confidentiality of the Confidential Information;

g.   interfering with Plaintiff's business advantages by facilitating Ekta Lasher's, Bravo's, Jaeger's, and/or Flemington Auto's unauthorized use of the Confidential Information; and

h.   failing to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

121.   As a direct and proximate result of the foregoing breaches, Plaintiff has been damaged and suffers ongoing harm, including immediate and irreparable harm to its goodwill, reputation and franchise system.

## COUNT TWO
### *Breach of the 277 Franchise Agreement by Balhar Lasher and Square-1*
### *(Monetary and Equitable Claim)*

122.   Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

123.   The 277 Franchise Agreement is a valid and enforceable contract.

124.   Plaintiff has performed every obligation and condition required under the 277 Franchise Agreement.

125.   Under the 277 Franchise Agreement, Square-1 and Balhar Lasher were obligated to, *inter alia*:

a.   immediately pay all amounts due and owing to H1 upon termination of the 277 Franchise Agreement;

b.   refrain from directly or indirectly competing with Plaintiff within 25 miles of the former 277 Location;

23

  c. maintain absolute confidentiality of H1's Confidential Information and trade secrets, and to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

  d. Square-1 and Balhar Lasher breached the 277 Franchise Agreement by, *inter alia*:

  a. failing to pay amounts due and owing to H1;

  b. conspiring with Ekta Lasher, Bravo and Hamilton Auto to convert the 277 Location to a Hamilton Auto location;

  c. indirectly competing with H1 at the 277 Location following the termination of the 277 Franchise Agreement in concert with Ekta Lasher, Bravo and/or Hamilton Auto;

  d. directly competing with H1 by operating an auto care business operated at the 277 Location following the termination of the 277 Franchise Agreement;

  e. using the Marks and holding out the Hamilton Auto location as if it were a H1 franchise after the termination of the 277 Franchise Agreement;

  f. failing to maintain the absolute confidentiality of the Confidential Information;

  g. interfering with Plaintiff's business advantages by facilitating Ekta Lasher's, Bravo's and/or Hamilton Auto's unauthorized use of the Confidential Information; and

  h. failing to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

126. As a direct and proximate result of the foregoing breaches, Plaintiff has been damaged and suffers ongoing harm, including immediate and irreparable harm to its goodwill, reputation and franchise system.

## COUNT THREE
### *Breach of the Mutual Termination Agreement by Square-1, Balhar Lasher, and Ekta Lasher*
### *(Monetary and Equitable Damages)*

127.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

128.    The Mutual Termination Agreement is a valid and enforceable contract.

129.    Plaintiff has performed every obligation and condition required under the Mutual Termination Agreement.

130.    Under the Mutual Termination Agreement, Square-1, Balhar Lasher, and Ekta Lasher were obligated to, *inter alia*, comply with all post-termination obligations in the 277 Franchise Agreement.

131.    Square-1, Balhar Lasher, and Ekta Lasher breached the Mutual Termination Agreement by, *inter alia*:

   a.  as set forth herein, breaching their post-termination obligations under the 277 Franchise Agreement;

   b.  incorporating Hamilton Auto and Flemington Auto with the intent to compete with H1 within a 25-mile radius of the Franchise Locations;

   c.  colluding with Hamilton Auto, Bravo and/or others to convert the 277 Location to Hamilton Auto;

   d.  using the Marks and holding out the Hamilton Auto location as if it were a H1 franchise; and

   e.  failing to maintain the absolute confidentiality of the Confidential Information.

132.     As a direct and proximate result of the foregoing breaches, Plaintiff has been damaged and continues to suffer ongoing harm, including immediate and irreparable harm to their goodwill, reputation and franchise system.

### COUNT FOUR
#### Breach of the 190 Franchise Agreement Guaranty by Balhar Lasher

133.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

134.     The 190 Guaranty is a valid and enforceable contract.

135.     H1 has performed every obligation and condition required under the 190 Guaranty.

136.     Under the 190 Guaranty, Balhar Lasher personally guaranteed the full and complete performance of the 190 Franchise Agreement.

137.     Due to the breaches of the 190 Franchise Agreement as described herein, Balhar Lasher breached the 190 Guaranty.

138.     As a result of the foregoing breaches, H1 has been damaged.

### COUNT FIVE
#### Breach of the 277 Franchise Agreement Guaranty by Balhar Lasher and Ekta Lasher

139.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

140.     The 277 Guaranty is a valid and enforceable contract.

141.     H1 has performed every obligation and condition required under the 277 Guaranty.

142.     Under the 277 Guaranty, Balhar Lasher and Ekta Lasher personally guaranteed the full and complete performance of the 277 Franchise Agreement.

143.    Due to the breaches of the 277 Franchise Agreement as described herein, Balhar Lasher and Ekta Lasher breached the 277 Guaranty.

144.    As a result of the foregoing breaches, H1 has been damaged.

### COUNT SIX
*Fraudulent Misrepresentation by Balhar Lasher, Ekta Lasher, AAA and Square-1*

145.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

146.    In October, November and December 2020, Balhar Lasher represented his intention, individual and on behalf of AAA and Square-1, to close the Franchise Locations, asserting that his business was suffering due to the impact of the COVID-19 pandemic and he could no longer financially sustain operations.

147.    On November 17, 2020, Balhar Lasher informed H1 that the 277 Location was permanently closing.

148.    Based on Balhar's Lasher's and Ekta Lasher's representations, individually and on behalf of AAA and Square-1, H1 entered into the Mutual Termination Agreement and the Deferment Agreement.

149.    Balhar Lasher failed to inform Plaintiff, individually and on behalf of AAA and Square-1, that he had no intention of closing the stores.

150.    Balhar Lasher failed to inform Plaintiff, individually and on behalf of AAA and Square-1, that his businesses had recently received substantial PPP and COVID EIDL financial assistance to support continued operations.

151.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Balhar Lasher, AAA, Square-1, and Ekta Lasher, not reasonably known or knowable to Plaintiff, and material at the time they were made.  Balhar Lasher, AAA, Square-1,

27

and Ekta Lasher intended to deceive Plaintiff through their representations, when they knew those representations were not true.

152.    Balhar Lasher, AAA, Square-1, and Ekta Lasher's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to enter into the Mutual Termination Agreement and Deferral Agreement. In misleading Plaintiff, Plaintiff suffered financial damages as a result of Balhar Lasher's, AAA's, Square-1's, and Ekta Lasher's actions. Balhar Lasher, AAA, Square-1, and Ekta Lasher also gained financially from, and as a result of, their misrepresentations and the resulting Mutual Termination Agreement and Deferral Agreement.

153.    Plaintiff relied to its detriment on Balhar Lasher's, AAA's, Square-1's, and Ekta Lasher's misrepresentations and fraudulent omissions. Had Plaintiff been adequately informed and not intentionally deceived, it would have acted differently by, without limitation: (i) not executing the Mutual Termination Agreement, (ii) not executing the Deferment Agreement; (iii) recovering additional fees from AAA and Square-1; and (iv) recovering additional fees from Balhar Lasher and Ekta Lasher as Guarantors.

154.    By and through such fraud, deceit, misrepresentations and/or omissions, Balhar Lasher, AAA, Square-1, and Ekta Lasher intended to induce Plaintiff to alter its position to their detriment. Specifically, Balhar Lasher and AAA fraudulently and deceptively induced Plaintiff, without limitation, to enter into the Deferral Agreement.  Further, Balhar Lasher, Square-1, and Ekta Lasher fraudulently and deceptively induced Plaintiff, without limitation, to enter into the Mutual Termination Agreement

155.    Plaintiff had no reason to believe that the foregoing misrepresentations were untrue, and Plaintiff justifiably and reasonably relied on Balhar Lasher's, AAA's, Square-1's, and Ekta Lasher's misrepresentations and omissions.

156.    As a direct and proximate result of Balhar Lasher's, AAA's, Square-1's, and Ekta Lasher's misrepresentations and/or omissions, Plaintiff suffered damages.

157.    Balhar Lasher's, AAA's, Square-1's, and Ekta Lasher's conduct as described herein was willful and malicious and was designed to maximize their profits even though they knew that it would cause loss and harm to Plaintiff.

## COUNT SEVEN
### *Unjust Enrichment Against Defendants*

158.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

159.    As described herein, Defendants have knowingly and intentionally misappropriated and unlawfully used H1's Confidential Information in furtherance of their operation of Hamilton Auto and Flemington Auto.

160.    In equity and fairness, Defendants are liable to H1 for any amounts collected from Defendants' unlawful and improper competition.

161.    Defendants knowingly retain these benefits, to which they are not rightfully entitled, at the expense and to the damage of H1.

162.    There is no adequate remedy at law that will protect H1 from continued irreparable injury or fully compensate it for the damage caused by Defendants' wrongful conduct.

## COUNT EIGHT

*Violation of the Defend Trade Secrets Act Against All Defendants*

163.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

164.    The DTSA provides a private civil action for the misappropriation of trade secrets that are related to a product or service used in interstate or foreign commerce.

165.    H1 owns numerous trade secrets, including without limitation, the Confidential Information.

166.    Plaintiff's trade secrets implicate interstate commerce, and each of the Defendants are engaged in interstate commerce.

167.    Throughout Plaintiff's existence, Plaintiff has carefully developed and refined its trade secrets, which are key ingredients of their continued success.

168.    Plaintiff's trade secrets provide independent economic value as Plaintiff uses the Confidential Information to procure and maintain customers, through competitive pricing and confidential and proprietary processes and procedures.

169.    Plaintiff's Confidential Information is not generally known and is not readily ascertainable by proper means.

170.    Plaintiff has taken extensive measures to preserve and protect its trade secrets for the purpose of maintaining its competitive advantage, and only discloses such information to officers, employees and franchisees who have promised to keep the Confidential Information strictly confidential to only use it in connection with a H1 franchise.

171.    Plaintiff took steps to prevent disclosure of its Confidential Information, including, but not limited to mandating those with access sign confidentiality agreements, and preventing its Confidential Information from being accessed by the public.

172.    Square-1, AAA, Balhar Lasher and/or Ekta Lasher have intentionally disclosed Plaintiff's trade secrets to Hamilton Auto, Flemington Auto, Bravo, Jaeger and/or others for their benefit and/or the benefit of third parties with knowledge that such disclosure would harm Plaintiff.

173.    As a direct and proximate result of each of the Defendants' willful, improper, and unlawful disclosure of Plaintiff's Confidential Information, Plaintiff has suffered and will continue to suffer immediate and irreparable harm.

174.    Pursuant to 18 U.S.C. § 1836(b)(3)(B), Plaintiff is entitled to recover damages for its actual losses, and to prevent Defendants' unjust enrichment.

175.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), the Court should enjoin Defendants' use and misappropriation of Plaintiff's Confidential Information.

176.    Each of the Defendants' misappropriation of Plaintiff's Confidential Information is willful and malicious, thus warranting an award of exemplary damages under 18 U.S.C. § 1836(b)(3)(C), and an award of reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

### COUNT NINE
***Tortious Interference with the Franchise Agreements and the Mutual Termination Agreement Against Bravo, Jaeger, Hamilton Auto, and Flemington Auto***

177.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

178.    At all relevant times, Hamilton Auto, Flemington Auto, Bravo, and Jaeger had knowledge of the existence of the Franchise Agreements and the Mutual Termination and were aware of their terms.

179.    Hamilton Auto, Flemington Auto, Bravo, and Jaeger intentionally interfered with Balhar Lasher's, Ekta Lasher's, AAA's, and Square-1's obligations under the Franchise Agreements and the Mutual Termination Agreement by using H1's Confidential Information and Marks without Plaintiff's consent.

180.    As a direct and proximate result of the intentional interference with the Franchise Agreements, Balhar Lasher, Square-1, and AAA breached the Franchise Agreements by, *inter alia*, violating the non-competition clauses of the Franchise Agreements, failing to maintain the absolute confidentiality of the Confidential Information, failing to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

181.    As a direct and proximate result of the intentional interference with the Franchise Agreements, Balhar Lasher, Ekta Lasher, and Square-1 breached the Mutual Termination Agreement by, *inter alia*, violating the non-competition clauses of the Franchise Agreements, failing to maintain the absolute confidentiality of the Confidential Information, failing to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

182.    As a direct and proximate result of the intentional interference with Plaintiff's contractual relations, Plaintiff has been damaged.

183.    Plaintiff will continue to suffer irreparable harm unless the Court enjoins Hamilton Auto, Flemington Auto, Bravo, and Jaeger from further intentional interference with the Franchise Agreements and the Mutual Termination Agreement.

## COUNT TEN
### *Tortious Interference With The Franchise Agreements Against Ekta Lasher*

184.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

185.    At all relevant times, Ekta Lasher had knowledge of the existence of the Franchise Agreements and the Deferment Agreement and was aware of their terms.

186.    Ekta Lasher intentionally interfered with the Balhar Lasher's, Square-1's, and AAA's obligations under the Franchise Agreements by incorporating Hamilton Auto and

Flemington Auto, using H1's Confidential Information and Marks without Plaintiff's consent, and intentionally breaching the 277 Guaranty.

187.    As a direct and proximate result of Ekta Lasher's intentional interference with the Franchise Agreements, Balhar Lasher, Square-1, and AAA breached the Franchise Agreements by, *inter alia*, violating the non-competition clauses of the Franchise Agreements, failing to maintain the absolute confidentiality of the Confidential Information, failing to adopt and implement procedures to prevent unauthorized use or disclosure of H1's Confidential Information.

188.    As a direct and proximate result of Ekta Lasher's intentional interference with Plaintiff's contractual relations, Plaintiff has been damaged.

189.    Plaintiff will continue to suffer irreparable harm unless the Court enjoins Ekta Lasher from further intentional interference with the Franchise Agreements.

## COUNT ELEVEN
### *Unfair Competition (Against Defendants)*

190.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

191.    Defendants improperly use, and will continue to use, H1's Confidential Information in furtherance of the operation of Hamilton Auto and Flemington Auto, which compete directly with H1.

192.    Through their actions, Defendants are intentionally attempting to deceive H1's current and prospective customers for Defendants' business gain.

193.    As a direct and proximate result of Defendants' actions, H1 has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

## COUNT TWELVE
### *Federal Trademark Infringement (Against Defendants)*

194.    H1 repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

195.    Defendants used H1's Marks and confusingly similar marks to identify the services provided from the Franchise Locations as those of a H1 franchisee.  However, Defendants were actually providing the services through Hamilton Auto and Flemington Auto.

196.    H1 did not consent to Defendants use of H1's Marks for the sale, offer of sale, or advertising of Hamilton Auto's or Flemington Auto's goods or services and Defendants' use was designed to cause confusion, cause mistake, and to deceive the public.

197.    Defendants have infringed H1's Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

198.    Through their unlawful use and display of the Marks, Defendants have profited and H1 has been damaged.

199.    Defendants' acts were done knowingly and intentionally to cause confusion, cause mistake, and/or to deceive.

200.    As a result, H1 has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

## COUNT THIRTEEN
### *False Designation and Misrepresentation of Origin (Against Defendants)*

201.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

202.    Defendants used H1's Marks and confusingly similar marks to identify the services provided from the Franchise Locations as those of a H1 franchisee.  However, Defendants are actually providing the services through Hamilton Auto and Flemington Auto.

203.    Defendants' use of H1's Marks and continued maintenance of websites referencing H1's franchise services is likely to cause confusion, cause mistake, and/or deceive as to Hamilton

Auto's and Flemington Auto's affiliation, connection, or association with H1, or as to the origin, sponsorship, or approval of Hamilton Auto's and Flemington Auto's goods, services, or commercial activities.

204.    The unlawful conduct of Defendants described herein constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

205.    As a direct and proximate result of Defendants' wrongful conduct, H1 has suffered damages to the value of the Marks and to customer goodwill.

206.    Defendants' acts have been and are being done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive.

207.    As a result, H1 has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

## COUNT FOURTEEN
### *Federal Trademark Dilution (Against Defendants)*

208.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

209.    The Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

210.    Defendants' actions and conduct, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

211.    H1 is entitled to injunctive relief under 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

212.     As a direct and proximate result of Defendants' wrongful conduct, H1 has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

213.     Pursuant to 15 US.C. § 1117, H1 is entitled to recover damages from Defendants caused by their unlawful use of the Marks, in an amount to be determined at trial.

## COUNT FIFTEEN
### *Request for Preliminary Injunction (Against Defendants)*

214.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

215.     H1's application for injunctive relief is authorized by Fed. R. Civ. P. 65.

216.     Pursuant to the Franchise Agreements, Balhar Lasher, Square-1 and AAA acknowledged and agreed that H1 is entitled to a temporary restraining order, preliminary and/or permanent injunction for breach of any of the in-term and post-termination obligations of the Franchise Agreements.

217.     By providing competing auto care services and, disclosing and using H1's Confidential Information for their own benefit, Defendants have irreparably harmed, and will continue to irreparably harm, H1.

218.     For the foregoing reasons, H1 respectfully request that the Court grant the following injunctive relief:

A.     Enjoin Balhar Lasher, Square-1 and AAA from breaching the post-termination covenants in the Franchise Agreements;

B.     Enjoin Ekta Lasher, Bravo, Jaeger, Hamilton Auto, and Flemington Auto from interfering with Balhar Lasher's, AAA's, and Square-1's performance under the Franchise Agreements, the Deferment Agreement, and the Mutual Termination Agreement;

C.      Enjoin Ekta Lasher from interfering with Balhar Lasher's, Square-1's, and AAA's performance under the Franchise Agreements;

D.      Enjoin Defendants from continued unlawful use and disclosure of H1's Confidential Information;

E.      Enjoin Defendants from diverting or attempt to divert any business or customer to any competitor, including Hamilton Auto and Flemington Auto;

F.      Enjoin Defendants facilitation of and/or participation in the operation of the competing business located at the Franchise Locations; and

G.      Enjoin Defendants from continued unlawful use and disclosure of any internet reviews, Google My Business profile, and Google My Business reviews associated with AAA and Square-1 as former H1 franchisees.

219.    H1 has a high likelihood of success on the merits on its claims, and it is probable that it will recover from Defendants, as Defendants are openly and actively violating the DTSA, and Balhar Lasher, AAA and Square-1 are also materially breaching the express terms of the valid and enforceable Franchise Agreements, Deferment Agreement and Mutual Termination Agreement with help from Ekta Lasher, Bravo, Jaeger, Hamilton Auto, and Flemington Auto.

220.    Irreparable harm will result if a preliminary injunction is not issued because Defendants will continue to violate the DTSA and Balhar Lasher, AAA, and Square-1 through Hamilton Auto and Flemington Auto, will continue to breach the Franchise Agreements by using and disclosing H1's confidential information and trade secrets, which has caused and will continue to cause irreparable and irreversible harm to H1.

221.    H1 has no adequate remedy at law because the Defendants refuse to cease their unlawful conduct.

222.    Balhar Lasher, Square-1, and AAA waived any requirement that H1 post bond in Section 5.20.1 of the Franchise Agreements.

223.    The injury to H1 outweighs any injury that would be sustained by Defendants collectively, and each of them, as a result of the requested injunctive relief.

224.    Injunctive relief will not adversely affect the public interest.

225.    Defendants have been or are being served with notice of this application for injunctive relief.

## COUNT SIXTEEN
### *Request for Permanent Injunction (Against Defendants)*

226.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

227.    After a trial on the merits or a final judgment, H1 asks the Court to convert any preliminary injunction as specified above into a permanent injunction.

228.    H1 has joined all indispensable parties pursuant to Fed. R. Civ. 19.

## PRAYER FOR RELIEF

WHEREFORE, H1 prays for judgment against Defendants and:

1.    For the following injunctive relief:

   A.    Enjoining Balhar Lasher, Square-1, and AAA from breaching the post-termination non-competition covenants in the Franchise Agreements;

   B.    Enjoining Bravo, Jaeger, Hamilton Auto, and Flemington Auto from interfering with Balhar Lasher's, Square-1's, and AAA's performance under the Franchise Agreements and Mutual Termination Agreement;

   C.    Enjoining Ekta Lasher from interfering with Balhar Lasher's, Square-1's, and AAA's performance under the Franchise Agreements;

   D.    Enjoining Defendants from continued unlawful use and disclosure of H1's Confidential Information;

   E.    Enjoining Defendants from diverting or attempt to divert any business or customer to any competitor;

   F.    Enjoining Defendants facilitation of and/or participation in the operation of the competing business located at the Franchise Locations; and

G.      Enjoining Defendants from continued unlawful use and disclosure of any internet reviews, Google My Business profile, and Google My Business reviews associated with AAA and Square-1 as former H1 franchisees.

2.      For an accounting of Hamilton Auto and Flemington Auto's revenues and profits for all auto care services and other receipts performed since November 17, 2020;

3.      For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits;

4.      For a monetary award against Defendants for H1's reasonable attorneys' fees and costs, in an amount to be proven at trial;

5.      For pre- and post-judgment interest; and

6.      For such other relief as the Court deems just and appropriate.

## JURY DEMAND

H1 demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. Rule 38.

Date:  October 5, 2021                    **PLAINTIFF H-1 AUTO CARE, LLC**

*/s/ Peter G. Siachos*
Peter G. Siachos
GORDON REES SCULLY MANSUKHANI, LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: 646.808.6358
E: psiachos@grsm.com

## **VERIFICATION**

MICHAEL COWAN does hereby verify and state pursuant to 28 U.S.C § 1746:

I am President and Chief Executive Officer of H-1 Auto Care, LLC ("H1"). I have read the foregoing Verified Complaint, know the contents thereof, and state the factual allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as President and Chief Executive Officer of H1, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of H1's records and conversations with H1's employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 5th day of October, 2021.

_____
Michael Cowan