**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| H-1 AUTO CARE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BALHAR LASHER, *et. al.*, <br><br> Defendants. | Civil Action No. 21-18110 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon the Motion for a Preliminary Injunction filed by Plaintiff H-1 Auto Care, LLC, ("Plaintiff") ("the Motion", ECF No. 26). Plaintiff filed a brief in support of the Motion ("Moving Br.", ECF No. 26-1), along with a Reply.[1] ("Reply Br.", ECF No. 27). Defendants Balhar Lasher ("B. Lasher"), Ekta Lasher ("E. Lasher"), Square-1 Auto Care, Inc. ("Square-1"), AAA Auto Care, Inc. ("AAA"), Flemington Auto Care Inc. ("Flemington Auto"), Hamilton Auto Care Inc. ("Hamilton Auto") Jose Bravo ("Bravo"), and Scott Jaeger ("Jaeger") (collectively "Defendants") opposed the Motion. ("Opp'n Br.", ECF No. 28.)

  The Court has carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY the Motion for a Preliminary Injunction.

---

[1] Plaintiff's Reply brief was erroneously filed on CMECF as a Response, but the brief itself is correctly identified as a Reply. The Court will therefore refer to it as a Reply.

1

I.        <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

On October 5, 2021, Plaintiff filed a Complaint ("Compl.", ECF No. 1) seeking injunctive relief and monetary damages against former franchisees for allegedly using Plaintiff's business resources and employees to start a competing business in violation of their Franchise Agreements. (Compl. ¶ 20.) On November 23, 2021, Plaintiff filed its first motion for a preliminary injunction. (*See* ECF No. 10.) Due to repeated extension requests by the parties, the Court ordered them to serve remaining briefs upon each other and to file them when their briefing on the Motion was complete; in the meantime, the Court administratively terminated the Motion. (*See* ECF No. 22.) On March 14, 2022, Plaintiff re-filed its motion along with the brief in support and reply. (*See* ECF Nos. 26, 27.) Defendants filed their opposition. (*See* ECF No. 28.)

Plaintiff operates auto care service centers located throughout the United States. (*Id*. ¶ 25.) It owns federally registered H1 trade name, trademarks, service marks, logos, and derivations thereof ("the Marks"). (*Id*. ¶ 27.) Its franchises operate pursuant to agreements that grant franchisees a limited license to use the Marks and confidential information during the term of the agreement. (*Id*. at ¶ 28.) During the term of the franchise agreements and any terminations of those agreements, Plaintiff's franchisees are required to abide by the in-term and post-termination obligations, including confidentiality agreements and covenants not to compete. (*Id*. ¶ 30.) On or about June 17, 2011, Defendant B. Lasher entered into a franchise agreement with Plaintiff for the territory in Flemington, New Jersey, known as 190 ("190 Agreement"). (*Id*. ¶ 31; Siachos Decl., Ex. A.) On or about August 7, 2012, Defendant B. Lasher assigned the 190 Franchise Agreement to Defendant AAA. (*Id*. ¶ 32.) AAA is a corporation owned and controlled by Defendant B. Lasher. (*Id*. ¶ 12.) Through AAA, Defendant B. Lasher operated an H1 location under the 190 Franchise Agreement at the Flemington location. (*Id*. ¶ 33.) On or about March 15, 2019, Square-

1 entered into another franchise agreement with H1 for the territory of Hamilton, New Jersey. (*Id*. ¶ 35.) This agreement is referred to as the "277 Franchise Agreement." (*Id*.) Defendant B. Lasher executed the 277 Franchise Agreement on behalf of Defendant Square-1. (*Id*. ¶ 36.) Square-1 is also a corporation owned and controlled by Defendant B. Lasher. (*Id*. ¶ 13.) Through Square-1, Defendant B. Lasher operated an H1 location pursuant to the 277 Franchise Agreement at a location in Mercerville, New Jersey ("277 Location"). (*Id*. ¶ 35.) The 190 Location and 277 Location are together referred to as "Franchise Locations." (*Id*.)

In Section 14.7 of the Franchise Agreements, AAA and Square-1 agreed to immediately pay all amounts due and owing to Plaintiff upon the termination of any Franchise Agreement. (*Id*. ¶ 43.) Additionally, pursuant to the terms of the Franchise Agreements, Defendants AAA and Square-1 agreed to cease use of all equipment, format, confidential methods, customer database, programs, literature, procedures, Marks and distinctive trade dress, forms, slogans, uniforms, signs, symbols, or devices. (*Id*. ¶ 46.) Defendants AAA and Square-1 additionally agreed to liquidated damages. (*Id*. ¶ 47.)

Further, Defendants AAA and Square-1 agreed to a "non-solicit covenant"[2], agreeing that for a period of two years following termination to not own, maintain, engage in, be employed by, advise, invest in, franchise, make loans to or have any interest in any business which is the same as or substantially similar to the Franchised Business and which is located within a 25-mile radius of the Franchise Locations. (*Id*. ¶ 48.)

Defendants AAA and Square-1 additionally agreed to maintain absolute confidentiality of Plaintiff's confidential information. (*Id*. ¶ 49.) With respect to the 277 Location, Defendant B.

---

[2] While the Complaint references this provision as a "non-solicit covenant," the terms of the covenant more closely appear as a non-compete covenant. For purposes of the recitation of the facts, the Court will adopt Plaintiff's nomenclature.

Lasher executed a Confidentiality and Non-Competition Agreement, whereby he agreed that for a period of six months following the termination of the Franchise Agreement to "not employ or solicit for employment any person who is at the time employed by Franchisor, Franchise Owner or by any other franchisee in the System[.]" (*Id*. ¶ 50.) Additionally, with respect to the 277 Location, Defendant B. Lasher agreed to a non-compete agreement for a period of two years after the termination of the 277 Franchise Agreement. (*Id*. ¶ 51.)

On or about October 20, 2020, Defendant B. Lasher contacted Plaintiff, on behalf of Defendants AAA and Square-1, with his intention to close the Franchise Locations and file for bankruptcy, asserting that due to the COVID-19 pandemic, the businesses were suffering and could not sustain their financial obligations. (*Id*. ¶ 55.) After conversations with Plaintiff, Defendant B. Lasher indicated he planned to shut down the 277 Location and focus on the 190 Location with financial support from Plaintiff. (*Id*. ¶ 56.)

Defendants Square-1, B. Lasher, E. Lasher, and Plaintiff entered into an agreement dated November 17, 2020 ("Mutual Termination Agreement") to terminate the 277 Franchise Agreement. (*Id*. ¶ 58.) The Mutual Termination Agreement indicated that the 277 Location would permanently close on November 30, 2020 or earlier. (*Id*. ¶ 59.) Defendants Square-1, B. Lasher, and E. Lasher agreed that the Mutual Termination Agreement that the non-compete and non-solicitation covenants in the 277 Franchise Agreement would remain effective. (*Id*. ¶ 61.)

On or about December 21, 2020, Defendant B. Lasher represented that the 190 Location would close on or before December 31, 2020. (*Id*. ¶ 63.) The system Defendant AAA used for generating client invoices and recording sales reflected no sales after December 22, 2020 at the 190 Location. (*Id*. ¶ 64.) Despite the lack of recorded sales, however, the location continued to operate and use Plaintiff's name and Marks in violation of the 190 Franchise Agreement. (*Id*. ¶

4

65.) Defendants B. Lasher and Jaeger maintained the same telephone number and employees at the store and continued to answer the telephone as if the location was still an H1 franchise and directed customers to the new store. (*Id.*) Under the 190 Franchise Agreement, the closure or transfer of the 190 Location without approval is an event of default. (*Id.* ¶ 68.) As such, Plaintiff terminated the 190 Franchise Agreement on December 29, 2020. (*Id.* ¶ 69.)

On or about January 7, 2021, Plaintiff learned that on November 5, 2020, twelve days before the execution of the 277 Mutual Termination Agreement, a Certificate of Incorporation was filed with the State of New Jersey forming Hamilton Auto Care Inc. ("Defendant Hamilton Auto") with Defendant E. Lasher as incorporator and director. (*Id.* ¶ 71.) Additionally, in January of 2021, Plaintiff learned that on November 17, 2020, a Certificate of Incorporation was filed with the State of New Jersey forming Flemington Auto Care Inc., ("Defendant Flemington Auto") with Defendant E. Lasher as incorporator and director. (*Id.* ¶ 72.)

Plaintiff alleges that Flemington Auto and Hamilton Auto were formed at the behest of Defendant B. Lasher to operate competing auto care facilities at the former Franchise Locations in competition with Plaintiff in direct violation of the Franchise Agreements. (*Id.* ¶ 73.) Plaintiff alleges that instead of closing the 277 Location, Defendant Square-1 continued to operate the location as an H1 facility and continued to use Plaintiff's confidential information and Marks. (*Id.* ¶ 74.)

Plaintiff alleges Defendants colluded to ensure Hamilton Auto and Flemington Auto obtained possession and control over the leases for the Franchise Locations. (*Id.* ¶ 86.)

Plaintiff filed the Motion for Preliminary Injunction on March 14, 2022. The Motion seeks preliminary injunctive relief to prevent Defendants B. Lasher, AAA, and Square-1 from breaching the post-term obligations under the Franchise Agreements, the remaining Defendants from

tortiously interfering with these obligations, and all Defendants from harming Plaintiff's business interests.  (Moving Br. at 2.)

## II. LEGAL STANDARD

To obtain a preliminary injunction, the moving party must demonstrate: "(1) the reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured if relief is not granted.  Moreover, the district court also should take into account, when relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 777 (3d Cir.2001). "[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)).  It follows that a "failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *See id*. at 777 (citing *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982)).  As a threshold matter, the Court therefore considers the first two prongs together.  Only when a plaintiff has sufficiently met the first two prongs, does the Court consider the third prong relating to the possibility of harm to other parties and finally, evaluate whether public interest is served by granting injunctive relief.

## III. DISCUSSION

In this case, the Court need only analyze the second factor of the preliminary injunction analysis, because, for the reasons set forth below, the Court finds that Plaintiff has failed to show that it will suffer irreparable harm. *See Executive Home Care Franchising LLC v. Marshall Health Corp.*, Civ. No. 15-760, 2015 WL 1422133, at *3 (D.N.J. March 26, 2015).

6

Plaintiff asserts that it will continue to suffer irreparable harm to its goodwill and reputation, its relationships with customers in the area, and existing and potential franchises. (Moving Br. at 8.) It argues that Defendants, unchecked, will continue to capitalize on the training, tools, and knowledge Plaintiff gave to Defendants. (*Id*. at 9.) Plaintiff asserts there is a real possibility of permanent loss of customers to a competitor or the loss of goodwill due to Defendants' wrongful behavior. (*Id*. at 10.)

In opposition, Defendants argue that Plaintiff has failed to carry the burden of clearly establishing a need for a preliminary injunction in this matter. (Opp'n Br. at 1.) Defendants assert that Plaintiff waited nearly one year after terminating the 190 Franchise Agreement before filing the pending motion, which makes it clear that there is no irreparable harm in need of an immediate remedy. (*Id*. at 2.) Defendant additionally asserts that they have ceased any use of Plaintiff's Marks and trade secrets, sold both former franchise businesses to unrelated third parties, and all purported damages Plaintiff alleges are compensable momentarily. (*Id*.)

In its reply brief, Plaintiff argues that Defendants have irreparably harmed Plaintiff by assigning their interests in the locations to third parties. (Reply Br. at 3.) Plaintiff argues that the contractual breaches, combined with the fact that Defendants E. Lasher and B. Lasher assisted other Defendants in their efforts to gain unauthorized access to Plaintiff's confidential information and trade secrets more than satisfies the irreparable harm prong for injunctive relief. (*Id*. at 4.) The Court notes that Plaintiff's Reply is conspicuously silent as to why it waited for 11 months before seeking a preliminary injunction.

A moving party "has the burden of establishing a 'clear showing of immediate irreparable injury.'" *Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 344 (D.N.J. 2020) (quoting *Louis v. Bledsoe*, 438 F. App'x 129, 131 (3d Cir. 2011)). Irreparable injury means harm "such

that legal remedies are rendered inadequate." *Tilden Recreational Vehicles, Inc. v. Belair*, 786 F. App'x 335, 342 (3d Cir. 2019) (citing *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997).

Demonstrating irreparable harm is perhaps the single most important prerequisite for issuing a preliminary injunction. *Donlow v. Garfield Park Academy*, Civ. No. 09-6248, 2010 WL 1381010, at * 1 (D.N.J. April 1, 2010) (internal citations omitted). The party seeking injunctive relief must demonstrate irreparable harm by "a clear showing of immediate irreparable injury." *Id*. (quoting *Florence v. Bd. of Chosen Freeholders*, 595 F.Supp.2d 492, 514 (D.N.J. 2009)). Before a court may issue preliminary injunctive relief, it must be convinced that the injunction is "the only way of protecting the plaintiff from [the] harm" in question. *See Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 731 (3d Cir. 2009). "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat" of irreparable harm. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000). This requires more than just "a possibility of a remote future injury," but rather sufficient evidence to make a "clear showing of immediate irreparable injury." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (quoting *Control Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351 (3d Cir. 1980)). The risk of irreparable harm must not be speculative. *Acierno*, 40 F.3d at 655. Furthermore, a court cannot find irreparable harm where a defendant's breach can be adequately remedied by monetary damages. *Peterson v. HVM L.L.C.*, Civ. No. 14-1137, 2015 WL 3648839, at *6 (D.N.J. June 11, 2015).

Fatal to Plaintiff's showing of irreparable harm in this case, it waited 11 months—a significant amount of time—after learning of Defendants' breach before filing the instant Motion. Courts have regularly found that "a Plaintiff's delay in seeking preliminary injunctive relief is evidence that speedy relief is not needed." *EMSL Analytical, Inc. v. Testamerica Analytical*

8

*Testing Corp.*, Civ. No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006); *Lanin v. Borough of Tenafly*, No. 12-3399, 2013 WL 936363, at *3 (3d Cir. Mar. 12, 2013) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights . . . [and] [d]elay[s] in seeking enforcement of those rights . . .tends to indicate at least a reduced need for such drastic, speedy action.") (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985)) (internal citations omitted). The period of delay begins to run "once the plaintiff has actual or constructive knowledge of the [d]efendant's use of infringing marks." *EMSL Analytical, Inc.,* 2006 WL 892718, at *12.  Plaintiff admits that in January of 2021 it learned Defendants were allegedly using its confidential information and Marks but delayed seeking injunctive relief until November of 2021.  (*See* ECF No. 1 at ¶ 60; ECF No. 10.)  Plaintiff's 11-month delay in seeking relief demonstrates that its anticipated injuries do not constitute irreparable harm.  *See Lanin*, 2013 WL 936363, at *3.  Many courts have found that a delay of just weeks or months precludes a showing of irreparable harm.  *Logic Technology Development LLC v. Levy,* Civ. No. 17-4630, 2021 WL 3884287, at *3 (D.N.J. Aug. 31, 2021) (citing *New Dana Perfumes Corp. v. The Disney Store, Inc*., 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) (finding that an unexplained delay of two months in filing cease and desist letter followed by unexplained delay of five months in moving for injunctive relief precluded a finding of irreparable harm)). What's more, Plaintiff makes no effort in its briefing to explain why it did not act sooner.  Accordingly, because Plaintiff fails to make the requisite showing of irreparable harm, the Court does not proceed to the other three factors needed to obtain a preliminary injunction.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction will be DENIED.  An appropriate order will follow.